598 A.2d 1

**Duane Theodore RICHARDSON**

v.

**STATE of Maryland.**

**No. 124, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 6, 1991.

Certiorari Granted Feb. 25, 1992.

260

James C. Savage, Assigned Public Defender of Rockville (Stephen E. Harris, Public Defender on the brief, Baltimore), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before MOYLAN, ALPERT, and MOTZ, JJ.

MOTZ, Judge.

Appellant, Duane Theodore Richardson, was convicted in the Circuit Court for Baltimore County (Nickerson, J.) of murder in the first degree and robbery with a dangerous and deadly weapon. He was sentenced to imprisonment for life on the murder conviction and twenty years imprisonment on the robbery with a dangerous and deadly weapon conviction.

## FACTS AND PROCEEDINGS BELOW

The State served appellant with a notice of intent to seek the sentence of death and of intent to seek a sentence of imprisonment for life without possibility of parole pursuant to Maryland Annotated Code Article 27, § 412(b).[1] Appel-

---

1. Section 412(b) provides as follows:
   (b) **Penalty for first degree murder.**—Except as provided under subsection (f) of this section, a person found guilty of murder in the first degree shall be sentenced to death, imprisonment for life, or

lant filed numerous motions to strike the notice of intent to seek the death penalty—at the pre-trial stage, at the pre-sentencing stage, at the sentencing hearing, and in a motion for judgment of acquittal after testimony was heard at the sentencing hearing. The ground asserted for each motion was that appellant is mentally retarded and, therefore, cannot be sentenced to death. *See* Md.Code Ann. art. 27, § 412(f) (1990 Supp). Although he presented substantial evidence on the issue of his mental retardation, the trial court denied the motions.

After appellant was convicted by the circuit court, he elected to be sentenced by a jury. The sentencing jury found that he was mentally retarded at the time he committed the crimes. The jury, however, was unable to agree upon a sentence. The circuit court then declared a mistrial and imposed a sentence for the murder conviction of imprisonment for life as required by Md.Ann.Code art. 27, § 413(k)(7)(iii) (1987). Additional facts will be set forth within as necessary.

## ISSUES

Although appellant did not receive the death penalty and did not receive a sentence of imprisonment for life without possibility of parole, he claims he was "substantially prejudiced" by the prosecutor's filing, and/or the trial judge's refusal to strike, the notice of intent to seek the death penalty because he must serve more actual time in custody than an accused who received the same sentence but has "not been served with the death notice." Thus, while

---

imprisonment for life without the possibility of parole. The sentence shall be imprisonment for life unless: (1)(i) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of death, and advised the person of each aggravating circumstance upon which it intended to rely, and (ii) a sentence of death is imposed in accordance with § 413; or (2) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of imprisonment for life without the possibility of parole under § 412 or § 413 of this article.
Md.Ann.Code art. 27, § 412(b) (1987).

ordinarily a person sentenced to life imprisonment is eligible for parole after serving fifteen years less credit for good time, Md.Ann.Code art. 41, § 4–516(b)(1), a person sentenced to life imprisonment under Md.Ann.Code art. 27, § 413 is not eligible for parole until he has served twenty-five years, less credit for good time. Md.Ann.Code art. 41, § 4–516(b)(2). Appellant's specific claims of error rest on this alleged prejudice. Those claims are:

1. The trial judge erred when he refused to grant appellant's pre-trial motions to strike the notice of intention to seek the penalty of death, and deprived appellant of the rights granted to him under Article 27 § 412(f)(1) of the Annotated Code of Maryland;

2. The Baltimore County prosecutor abused her discretion when she sought the death penalty against appellant under the totality of the circumstances;

3. Baltimore County's lack of discretion in applying Maryland's death penalty statute denied the appellant his Fourteenth Amendment right to equal protection under law;

4. The Maryland death penalty statute is facially unconstitutional and deprived appellant of his right to due process of law under the Fifth and Fourteenth Amendments.

We affirm.

## LEGAL ANALYSIS

### I.

Appellant's initial argument is that the circuit court erred in not ruling on his motion to strike before the trial, and in not granting that motion. He argues that the trial judge misconstrued Article 27, § 412(f). That section provides in pertinent part:

(1) **Penalty for defendants less than 18 years old or mentally retarded defendants.**—(1) If a person found guilty of murder in the first degree was, at the time the murder was committed, less than 18 years old *or if the*

*person establishes by a preponderance of the evidence that the person was, at the time the murder was committed, mentally retarded,* the person shall be sentenced to imprisonment for life or imprisonment for life without the possibility of parole *and may not be sentenced to death.* (emphasis added).

Appellant asserts that the determination of whether a defendant was mentally retarded at the time of the crime is properly made pre-trial because the provision that a mentally retarded defendant may not be sentenced to death is contained in the same subsection of the same statute as the similar provision that defendants under the age of eighteen may not be sentenced to death. He contends that age is a threshold issue to be determined prior to trial and that many of the policy justifications for excluding the mentally retarded from death eligibility are the same as the justifications for the exclusion of juveniles.[2] Accordingly, he asserts, the General Assembly must have intended that the issue of mental retardation be decided pre-trial.

Although § 412(f) does not expressly direct *when* the determination as to a defendant's mental retardation is to be made, it does state that a defendant must establish by a "preponderance of the evidence" that he is mentally retarded. This certainly suggests that it is a question of fact for

---

**2.** Appellant maintains that the mentally retarded, like juveniles, need "protection, guidance and rehabilitation" and should therefore, be kept out of the criminal justice system. One commentator advocates affording "functional juveniles" (mentally retarded individuals) the same treatment as "actual juveniles" (individuals under the age of eighteen) in the context of capital sentencing. This commentator asserts that both groups manifest "a lack of intellectual and reasoning capacity and lack of sophistication in dealing with stress on one's own." Gruttadaurio, Editor's Note: *Consistency in the Application of the Death Penalty to Juveniles and the Mentally Impaired: A Suggested Legislative Approach,* 58 U.Cin.L.Rev. 211, 233 (1989). Another commentator makes the point that deterrence, one of the primary justifications for capital punishment, is ineffective with respect to juveniles and the mentally retarded since generally, both lack the capacity to reason as adults. Juliet Ream, *Capital Punishment for Mentally Retarded Offenders: Is it Morally and Constitutionally Impermissible?,* 19 S.W.U.L.Rev. 89, 96 (1990).

the trier of fact after consideration of all evidence. Furthermore, the statutory language points to the sentencing phase as the time when this determination is to be made in that a defendant who meets this burden "shall not be *sentenced* to death"; it does not state that a defendant who meets this burden may not receive the death penalty notice required by § 412(b). Moreover, Maryland Rule 4–343 speaks directly to this question and requires precisely this conclusion.[3] (The Minutes of the Rules Committee indicate that the Committee suggested this provision be added to the Rules because it believed it to be implied by the statute. During consideration of the proposed amendments to the rule, the Chairman of the Committee stated that "the statute [Article 27, § 412(f) ] indicates this determination must be made during the sentencing proceeding, and that the proposed amendments are consistent with this interpretation." *See* Minutes of Maryland Rules Committee, Agenda Item 5, Consideration of Proposed Amendments to Rule 4–343(e), May 19, 1989).

■ Maryland Rule 4–343, which sets forth the sentencing procedure in capital cases, provides in relevant part:

(e) **Form of Written Findings and Determinations.**— Except as otherwise provided in section (f) of this Rule, the findings and determinations [with regard to capital sentencing] shall be made in writing in the following form:

\*    \*    \*    \*    \*    \*

### Section II

Based upon the evidence, we unanimously find that the following statement, if marked "proven," has been proven BY A PREPONDERANCE OF THE EVIDENCE that,

---

**3.** The Maryland Rules, although not enacted by the legislature, are drafted by the Standing Committee on Maryland Rules and adopted by the Maryland Court of Appeals. The Rules have the force of law, and are subject only to the power of the General Assembly or the Court of Appeals to rescind, change or modify them. *Hauver v. Dorsey,* 228 Md. 499, 180 A.2d 475 (1962); *State v. Diggs,* 24 Md.App. 681, 332 A.2d 283 (1975).

if marked "not proven," it has not been proven BY A PREPONDERANCE OF THE EVIDENCE.

At the time the murder was committed, the defendant was mentally retarded.

\* \* \* \* \* \*

(If the above statement is marked "proven," proceed to Section VI and enter "Life Imprisonment." If it is marked "not proven," complete Section III.) [4]

\* \* \* \* \* \*

(f) **Deletions from Form.**—Section II of the form set forth in section (e) of this Rule shall not be submitted to the jury unless the issue of mental retardation is generated by the evidence.

It is clear from this rule and the form contained in it that the Court of Appeals has considered the question and decided that the issue of mental retardation is properly determined by the trier of fact at the sentencing stage of the proceedings, rather than pre-trial or even pre-sentencing. Accordingly, since here the trier of fact was not the court, but a jury, the lower court was correct in refusing to rule on the issue of mental retardation.[5]

Moreover, the court below did not err either in ultimately denying appellant's motion to strike, or in imposing sentence. No statute or rule provides authority for a court to strike a notice of intent to seek the death penalty

---

4. Rule 4–343 was adopted by the Court of Appeals on June 28, 1989 and became effective July 1, 1989. The Rule Order stated that it would "take effect and apply to all actions commenced on or after July 1, 1989, and insofar as practicable, to all actions then pending." *See* Rules Orders published in 16 Maryland Register 1534 (July 14, 1989). Since both the guilt/innocence and sentencing phases of appellant's trial occurred subsequent to July 1, 1989, the rule clearly applies to his case.

5. It may be noted that the Court of Appeals, in adopting Rule 4–343, did *not* include the determination of age as an issue to be decided at sentencing. The Rules Committee considered, but rejected, an earlier draft which treated age like mental retardation. *See* Maryland Rules Committee Minutes, Agenda Item 5, Consideration of Proposed Amendments to Rule 4–343(e), May 19, 1989.

once a sentencing body has determined that a capital defendant was indeed mentally retarded at the time he committed the crime. On the contrary, Rule 4–343 again speaks directly to the appropriate next step—the sentencer must skip those portions of the form which relate to aggravating and mitigating circumstances and sentence the defendant to life imprisonment either with or without possibility of parole. Moreover, the direction in the rule, once again, is entirely consistent with statutory language. Section 412(f) provides that if found "mentally retarded" a person "shall be sentenced to imprisonment for life or imprisonment for life without the possibility of parole and may not be sentenced to death." This section only precludes imposition of the death penalty. It does not preclude either of the other two options under the capital sentencing statute, *i.e.*, imprisonment for life or imprisonment for life without parole. In this case, the jury could not agree on the latter sentence and so the trial judge was required by § 413(k)(7)(iii) to impose a sentence of imprisonment for life.

## II.

▉ Appellant makes two arguments regarding prosecutorial discretion. First, he claims that the prosecutor abused her discretion in seeking the death penalty in appellant's case, in light of the "totality of the circumstances." The "circumstances" to which appellant refers are the considerable evidence of appellant's mental retardation and alcohol dependency at the time the crime was committed. The Court of Appeals in *Calhoun v. State*, 297 Md. 563, 468 A.2d 45 (1983), addressed the issue of prosecutorial discretion in seeking the death penalty. There, the court said, "Absent any specific evidence of indiscretion by prosecutors resulting in an irrational, inconsistent, or discriminatory application of the death penalty statute, [appellant's claim of inconsistent and discriminatory application of the statute] cannot stand." 297 Md. at 605, 468 A.2d 45. There is no evidence here that the prosecutor sought the death penalty against appellant in an irrational, inconsistent or discrimina-

tory manner. Her knowledge of the evidence of appellant's mental retardation, even if she believed that the defense had a stronger case than that of the State, does not amount to an abuse of her discretion as a prosecutor. If that were the case, abuse of prosecutorial discretion would be rampant throughout the country. The prosecutor could have reasonably believed, in light of *all* of the evidence presented on mental retardation, that the jury could find that appellant was not retarded at the time the crimes charged were committed.[6]

█ Appellant's second argument with regard to abuse of prosecutorial discretion is that the process engaged in by Baltimore County prosecutors to determine which cases are appropriate for a death sentence is deficient. Specifically, appellant contends that because a defendant charged with first-degree or robbery-murder in Baltimore County is more likely than in other counties to receive notice of the State's intention to seek the death penalty, it is the "policy" of Baltimore County to seek the death penalty without using any discretion. Appellant even goes so far as to draw an analogy between the policy of Baltimore County State's

---

6.  Section 412(e)(3) defines mentally retarded as an individual who displays [1] "significantly subaverage intellectual functioning as evidenced by an intelligence quotient of 70 or below on an individually administered intelligence quotient test and [2] impairment in adaptive behavior" and provides [3] that mental retardation be manifest before the individual attains the age of 22. Md.Ann.Code art. 27, § 412(e)(3) (1990 Supp.).

There seems to be no question that the third element has been established. There was some dispute as to the other two. Appellant offered the testimony of three experts who testified that he had an IQ of 69, only one point below the intelligence quotient definition of mentally retarded. At least one of these experts, however, testified that the standard error of deviation for the IQ test administered was "plus or minus 2.5." Moreover, the State's expert, although unable to refute the results of the IQ tests, testified that she had serious doubts as to appellant's "impairment in adaptive behavior." Furthermore, there was abundant evidence, including appellant's own testimony, from which a fact finder might have concluded that his "adaptive behavior" was not "impaired," that he was able to function in society by renting his own room, feeding himself, holding a job, and washing his clothes.

Attorney and the mandatory death penalty statute held unconstitutional by the Supreme Court in *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). This analogy fails. In *Roberts,* the statute at issue required that the death penalty be imposed whenever the jury found a defendant guilty of first-degree murder. Unlike the statute in *Roberts,* the Maryland death penalty statute does not require mandatory imposition of the death penalty and satisfies both federal and state requirements on its face. *See Calhoun v. State,* 297 Md. 563, 605, 468 A.2d 45 *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984); *Tichnell v. State,* 287 Md. 695, 720–29, 415 A.2d 830 (1980).

Moreover, appellant has presented no evidence as to the policy of the Baltimore County State's Attorney regarding seeking the death penalty, let alone evidence that seeking the death penalty is mandatory for all capital cases prosecuted in Baltimore County.[7] Appellant relies primarily on a proportionality study which was being conducted by the Maryland Court of Appeals pursuant to Md.Ann.Code art. 27, § 414(e)(4), during the trial below. This review was based on evidence submitted in *Collins v. State,* 77 Md.App. 456, 550 A.2d 743 (1988), *cert. granted,* 315 Md. 223, 554 A.2d 351 (1989), *rev'd,* 321 Md. 103, 581 A.2d 426 (1990). Apparently, appellant was unable to obtain the results of this study, but gathered information from sources in the public defender's office. He cites the statistic that "[o]f the 13 offenders sentenced to death for robbery-murder in Maryland, nine were from Baltimore County, and all four of the single-victim cases with the single aggravating circumstance of robbery were from that jurisdiction." This statistic speaks to a jury's likelihood of sentencing a capital defendant to death, and *not* as appellant argues, to a prosecutor's likelihood of seeking the death penalty. Furthermore, the Court of Appeals in *Calhoun* commented that

---

7. Even if such a policy were, or is, in existence, appellant has not established that the State's Attorney acted improperly in this case.

"[t]o the extent that there is a difference in the practice of the various State's attorneys around the State," the proportionality review component of Article 27, § 414, is intended to assure that the death penalty is not imposed in a disproportionate manner. 297 Md. at 605.

### III.

Appellant's third ground for reversal is "that the Baltimore County prosecutor is more likely to seek the death penalty in a robbery-murder or first degree murder case than is a prosecutor in another county in Maryland." Although he concedes that he was not sentenced to death, appellant insists that his right to equal protection of the law has been violated because, had he been prosecuted in a county in which the State chose not to seek the death penalty in his case, he would be eligible for parole sooner. This claim is meritless.

The equal protection clause of the United States Constitution prohibits only invidious discrimination and not mere classification. *Jacob v. Adams,* 66 Md.App. 779, 795, 505 A.2d 930, *cert. denied, Barnes v. Cauthen,* 306 Md. 513, 510 A.2d 259 (1986) (citing *Clements v. Fashing,* 457 U.S. 957, 962–63, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1404 (1982); *Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, *reh'g denied,* 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256 (1955)). This court considered a contention analogous to the one at bar in *Middleton v. State,* 67 Md.App. 159, 506 A.2d 1191, *cert. denied,* 308 Md. 146, 517 A.2d 771 (1986). There, the equal protection claim was predicated on a lack of uniformity among various State's Attorney's Offices in the invocation of the mandatory sentencing law. In rejecting this claim, we stated:

> [A]ppellant's evidence certainly tended to show an absence, in Maryland, of a uniform policy for pursuing mandatory sentencing and, thus, by inference, perhaps the discriminatory effect of that lack of policy; however,

it did not, indeed it did not purport to, prove, either that the lack of uniformity was motivated by a discriminatory purpose, or that pursuing mandatory sentencing *in appellant's case* was based on an unjustifiable standard. In the absence of such a showing, appellant has failed to prove, as he must, that he was denied equal protection of the law.

*Id.* 67 Md.App. at 171–72, 506 A.2d 1191 (citations omitted) (emphasis in original). In *Middleton,* we relied upon *Wayte v. U.S.,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), in which the Supreme Court held that in order to establish an equal protection violation, a defendant must show that the government's system of prosecuting only certain males who failed to register with the Selective Service was motivated by a discriminatory purpose, as well as had a discriminatory effect. *See also Davis v. State,* 68 Md.App. 581, 514 A.2d 1229, *cert. granted,* 308 Md. 313, 518 A.2d 1071, *affirmed in part reversed in part on other grounds,* 310 Md. 611, 530 A.2d 1223 (1986) (to succeed in equal protection claim, appellant must show either that the policy is motivated by a discriminatory purpose or that the invocation of mandatory sentencing in a particular case was based on an unjustifiable standard such as race, religion, or some other arbitrary classification).

Appellant has failed to show any discriminatory purpose or imposition of an unjustifiable standard on the part of the Baltimore County State's Attorney in its application of the death penalty statute. For this reason, we reject his equal protection argument.

## IV.

Appellant's final two claims are based on the due process clause. First, he asserts that the Maryland death penalty statute provides no guidelines as to when a prosecuting attorney may seek the death penalty and, hence, the decision-making process is arbitrary and violates his due process rights. The Court of Appeals in *Calhoun v. State,* 297 Md. at 605, 468 A.2d 45, however, disposed of this issue.

There, the Court held that the Maryland death penalty statute, on its face, does not promote an arbitrary decision-making process, and that absent specific evidence of prosecutorial indiscretion, there is no constitutional violation.

■ Appellant's second argument is that the prosecuting attorney, by seeking the death penalty, usurped the jury's role in determining the length of his sentence, thus violating his Sixth Amendment right to a trial by jury.[8] Appellant, at his election, received a sentencing by jury. The jury made the determination that appellant should not be sentenced to death, but after much deliberation, was unable to agree on whether to impose a life sentence or a life sentence without the possibility of parole. The judge dismissed the jury and, pursuant to Article 27, § 413(k)(7)(iii), imposed the only sentence he could—a sentence of life imprisonment. Even if appellant had been sentenced as a non-capital defendant, the jury's choice of sentences would have been the same—imprisonment for life, or imprisonment for life without the possibility of parole. It is the date of initial parole consideration, rather than the sentence, that is affected by the prosecutor's decision whether or not to seek the death penalty.[9]

■ Thus, what appellant is really contending is that the Maryland legislature could not have rationally distinguished parole eligibility of defendants convicted of first-degree murder on the basis of whether or not they were sentenced in a capital proceeding. It would seem to us that there is a rational basis for this distinction. Killing another human

---

**8.** Contrary to appellant's assertion, there is no constitutional right to a jury sentencing in a capital case. *Hildwin v. Florida,* 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); *Jones v. State,* 310 Md. 569, 597, 530 A.2d 743 (1987). That right is created by Md.Ann.Code art. 27, § 413. *Id.*

**9.** There is no constitutional right to parole. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In Maryland, parole is a privilege, not a right. *Woods v. Steiner,* 207 F.Supp. 945, 951 (D.Md.1962).

being well may justify withholding parole eligibility for an additional ten years, even if mitigating circumstances, such as mental retardation, weigh against the imposition of a death sentence.[10] Accordingly, we find that appellant's Fifth and Fourteenth Amendment rights to due process were not violated.

JUDGMENTS AFFIRMED.

APPELLANT TO PAY COSTS.

---

**10.** We note, however, that the question of whether, in fact, the legislature intended that Md.Ann.Code art. 41, § 4–516(b)(2) be applicable to persons served with the death notice but found not death eligible, involves a question of statutory construction which is not presently before us. That question would be ripe for determination if and when raised by such a defendant *after* he has been imprisoned for the term which would have been required if he had not received the death notice (*e.g.* 15 years, less good time).