630 A.2d 238

Duane Theodore RICHARDSON

v.

STATE of Maryland.

No. 153, Sept. Term, 1991.

Court of Appeals of Maryland.

Sept. 10, 1993.

James Wyda, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

McAULIFFE, Judge.

Duane Theodore Richardson was charged with the 21 October 1988 robbery and murder of Jeffrey Alan White, a desk clerk at a Holiday Inn in Baltimore County. On 13 December 1988, the State informed Richardson, pursuant to Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 412, that it would seek the death penalty.[1] Richardson filed motions to strike the

---

1. Article 27, § 412(b) provides:

Except as provided under subsection (f) of this section, a person found guilty of murder in the first degree shall be sentenced to death, imprisonment for life, or imprisonment for life without the possibility

notice of intention to seek the death penalty at the presentencing stage, the sentencing hearing, and in a motion for judgment of acquittal after testimony was received at the sentencing hearing. Richardson's sole basis for these challenges was his contention that he was mentally retarded at the time the murder occurred, and thus ineligible for the death penalty under Art. 27, § 412(f)(1). That section provides, in pertinent part:

> If a person found guilty of murder in the first degree was, at the time the murder was committed, less than 18 years old or if the person establishes by a preponderance of the evidence that the person was, at the time the murder was committed, mentally retarded, the person shall be sentenced to imprisonment for life or imprisonment for life without the possibility of parole and may not be sentenced to death.

The trial court denied the motions.

The defendant elected to be tried by the court on the issue of guilt or innocence, and was found guilty of murder in the first degree and related offenses. The defendant then elected to have his sentence determined by a jury. At the sentencing stage, Richardson offered substantial evidence that his intelligence quotient was below 70 and his adaptive behavior was impaired.[2]

---

of parole. The sentence shall be imprisonment for life unless: (1)(i) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of death, and advised the person of each aggravating circumstance upon which it intended to rely, and (ii) a sentence of death is imposed in accordance with § 413; or (2) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of imprisonment for life without the possibility of parole under § 412 or § 413 of this article.

**2.** Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 412(e)(3) defines mentally retarded as follows:

"Mentally retarded" means the individual has significantly subaverage intellectual functioning as evidenced by an intelligence quotient of 70 or below on an individually administered intelligence quotient test and impairment in adaptive behavior, and the mental retardation is manifested before the individual attains the age of 22.

Pursuant to the trial judge's instructions, the jury followed the findings and sentencing determination form prescribed by Maryland Rule 4–343. The jury first found beyond a reasonable doubt that the defendant was a principal in the first degree to the murder. The jury then found by a preponderance of the evidence that the defendant was mentally retarded within the meaning of the statute.

Following the appropriate procedure, the jury then entered "Life Imprisonment" as the appropriate sentence, and proceeded to consider the final question of whether the sentence of life imprisonment should be without the possibility of parole. After extended deliberation, the jurors were unable to agree on that question, and so informed the trial judge. The judge accepted the findings on the issues upon which the jurors had agreed, and declared a mistrial because of their inability to agree on the final issue after having deliberated for a reasonable period of time. In accordance with the mandate of Art. 27, § 413(k)(7)(iii), the judge then imposed a sentence of life with possibility of parole on the murder count. He imposed an additional sentence of 20 years imprisonment consecutive to the life sentence, as a result of the conviction of robbery with a deadly weapon.

The defendant appealed, contending, among other things, that the trial judge erred in refusing to strike the State's motion of intent to seek the death penalty, and in refusing to grant his motion for judgment of acquittal made during the sentencing proceeding. He stated these motions should have been granted because the evidence of his mental retardation was at all times clear and irrefutable. He also contended that the Maryland death penalty statute would be unconstitutional because of the denial of the equal protection of laws and of due process if that statute were interpreted, in conjunction with Art. 41, § 4–516(b), Maryland Code (1957, 1990 Repl.Vol.) to mean that he is not eligible for parole until he has served 25 years of his life sentence. The Court of Special Appeals affirmed, *Richardson v. State*, 89 Md.App. 259, 598 A.2d 1 (1991), and we granted the defendant's petition for certiorari.

## I.

At the root of this controversy is the defendant's concern that the computation of his eligibility for parole consideration will be incorrectly and adversely affected by the fact that his sentence was imposed following a sentencing proceeding conducted in accordance with Art. 27, § 413. Article 41, § 4–516(c)(1), Maryland Code (1957, 1990 Repl.Vol., 1992 Cum. Supp.)[3] provides that, with two exceptions, a person who has been sentenced to life imprisonment is not eligible for parole until the person has served 15 years or the equivalent of 15 years when considering allowances for diminution of period of confinement provided by law.[4] One of the stated exceptions is when a sentence of life without parole is imposed. The other exception, which is at issue in this case, is that:

A person who has been sentenced to life imprisonment as a result of a proceeding under Article 27, § 413 is not eligible for parole consideration until the person has served 25 years or the equal of 25 years when considering the allowances for diminution of period of confinement provided for [by law].

Art. 41, § 4–516(c)(2).

The defendant advances alternative arguments in support of his contention that his eligibility for parole consideration with respect to his life sentence[5] should be calculated by applying the 15–year limitation[6] of § 4–516(c)(1) rather than the 25–

3. At the time of the sentencing proceeding in this case, current subsection (c) of § 4–516 was codified as subsection (b). For convenience, we refer to the subsection as it is currently codified.

4. Article 27, §§ 638C and 700 specify the circumstances under which allowances for diminution of the period of confinement are to be made.

5. This defendant's parole eligibility will be computed with regard not only to the life sentence, but also to the consecutive 20–year sentence for armed robbery. We limit our discussion to that portion of the computation involving the life sentence.

6. For convenience, we shall use the terms "15–year limitation" and "25–year limitation" to mean the stated period or its equivalent when considering the allowances for diminution of the period of confinement provided by law.

year limitation of § 4–516(c)(2). First, he argues that he should not have been "sentenced to life imprisonment as a result of a proceeding under Article 27, § 413" because his motions to strike the State's notice of intention to seek a sentence of death should have been granted. Alternatively, he argues that he is not "[a] person who has been sentenced to life imprisonment as a result of a proceeding under Article 27, § 413" within the meaning of Art. 41, § 4–516(c)(2) because the legislature intended by those words to include only those persons who were found to be "death-eligible" but were sentenced to life imprisonment because the § 413 sentencing authority did not find that the aggravating circumstances outweighed the mitigating circumstances.

## II.

The State suggests that consideration in this case of the question of the legislature's intent in amending the parole statute would be premature, and that the defendant will have to serve 15 years before that issue becomes justiciable. We do not agree. Rather, we find that interpretation of the statute is essential to the proper resolution of issues raised by this petition, and we will therefore address the question even though by so doing we provide the answer to a future, as well as a present, problem.

## III.

We are not persuaded by the defendant's first argument, that his motions to strike should have been granted. Although not so denominated, what the defendant sought by his motions to strike the State's notice of intention to seek a sentence of death was the entry of summary judgment on the issue of mental retardation. While conceding that he bore the burden of proof on that issue, the defendant contended that the evidence of his mental retardation was so overwhelming that the trial judge should have predetermined that issue as a matter of law, thereby avoiding the necessity of a full-blown § 413 sentencing proceeding.

■ The defendant's argument fails as a result of a very basic principle: summary judgment does not exist as a part of our criminal procedure. Maryland Rule 2–501, dealing with motions for summary judgment, applies only to civil matters, see Rule 1–101, and there is no similar procedure set forth in Title 4 of the Rules, which governs procedure in criminal cases. The defendant's prehearing motions were, in effect, motions for summary judgment, and they were properly denied.[7]

The motion made by the defendant at the conclusion of the evidence in the sentencing proceeding presents a different procedural question—the right of a defendant to make a motion questioning the legal sufficiency of the evidence in a § 413 sentencing proceeding. Rule 4–324, dealing with motions for judgment of acquittal, was obviously designed for use at a trial on the issue of guilt or innocence. We note, however, that the United States Supreme Court has described a sentencing proceeding similar in many respects to that provided by § 413 as "like the trial on the question of guilt or innocence...." *Bullington v. Missouri*, 451 U.S. 430, 446, 101 S.Ct. 1852, 1862, 68 L.Ed.2d 270 (1981). The Supreme Court has also accepted the characterization that a jury "acquitted the defendant of whatever was necessary to impose the death sentence" when it returned a verdict of life imprisonment in a capital sentencing proceeding. *Id.* at 445, 101 S.Ct. at 1861. Assuming that a motion for judgment of acquittal may be used to test the legal sufficiency of evidence in a capital sentencing proceeding, we fail to see how the granting of that motion would have improved the defendant's position with respect to the applicability of the parole eligibility statute. The 25–year limitation of Art. 41, § 4–516(c)(2) applies to "[a] person who has been sentenced to life imprisonment as a result of a proceeding under Art. 27, § 413." A sentence imposed as a result of a motion granted during a

---

7. We do not suggest that a motion to strike would not be used to challenge a notice of intention to seek a sentence of death when it is alleged that the notice fails to comply with the requirements of Art. 27, § 412(b) as to content or timeliness.

§ 413 hearing is as much a "result of a proceeding under Art. 27, § 413" as would be a sentence imposed because of the jury's consideration of the same evidence. If the State is correct in its assertion that any sentence imposed as a result of any § 413 proceeding falls within the 25–year parole limitation, the defendant could not avoid the impact of the law by arguing that the sentence resulted from action taken in the middle, as opposed to at the end, of the proceeding, or that the decision resulted from a judge's, as opposed to a jury's, consideration of the evidence presented at the proceeding.

## IV.

We turn, then, to the more difficult question of what the legislature intended when it spoke, in Art. 41, § 4–516(c)(2), of sentences of life imprisonment imposed "as a result of a proceeding under Art. 27, § 413." The State makes a strong argument that the literal language of § 4–516(c)(2) embraces any sentence of life that occurs after a § 413 sentencing proceeding has begun. The defendant contends that the legislature must have intended to include within the sanction of § 4–516(c)(2) only those sentences of life imprisonment that result from the process of weighing aggravating against mitigating circumstances—the process that is the focus of § 413. Otherwise, argues the defendant, persons who are not "death-eligible" could be subjected to a significant deprivation of parole eligibility upon the whim of the prosecutor, because the prosecutor may force a § 413 hearing for any person found guilty of first degree murder simply by filing a timely notice of intention to seek a sentence of death. Thus, the argument proceeds, persons guilty of first degree murder but not eligible for the death penalty would, under the State's interpretation of the statute, receive significantly different treatment with respect to parole eligibility without any rational basis, in violation of the constitutional guarantees of equal protection of the laws and of due process.

The legislature has, for more than 50 years, distinguished persons receiving life sentences from those receiving other sentences of imprisonment for purposes of parole consider-

ation. By Chapter 406 of the Laws of 1939, the legislature provided that

no person who has been sentenced to life imprisonment shall be eligible for parole consideration until he shall have served in confinement fifteen years.

Later, when by Chapter 625 of the Laws of 1953 the power to grant parole was generally transferred from the governor to the Board of Parole and Probation, the legislature retained the 15–year limitation for persons serving terms of life imprisonment, and further conditioned the grant of parole to such persons upon the approval of the governor. With the exception of an amendment to incorporate into the 15–year limitation the concept of allowances for diminution of a period of confinement, the statute remained essentially unchanged until 1983. On 12 January of that year, Senator Simpson introduced Senate Bill 41, which would have increased from 15 to 25 years the time a person sentenced to life imprisonment must serve before becoming eligible for parole consideration.

Neither the law that existed at that time nor the amendment as proposed by S.B. 41 would have generated any colorable complaint of denial of equal protection or of due process of law. The classification created by the legislature, placing persons serving life sentences in one category and those serving other than life sentences in another, for purposes of parole consideration, had a clear and rational basis. S.B. 41 did not, however, pass in its original form. After passage in the Senate, the bill was sent to the House, and referred to the Judiciary Committee. That committee amended the bill so that the 25–year limitation would not apply to every person sentenced to life imprisonment, but only to those who received a life sentence as a result of a § 413 proceeding. The bill as amended passed the House, and the Senate concurred in the amendments. S.B. 41 was enacted as Chapter 298 of the Laws of 1983.

The Maryland death penalty statute first narrows the category of persons eligible for imposition of the death penalty, and then provides for a weighing and balancing process by which the sentencing authority determines whether a person

eligible for the imposition of a sentence of death should receive that sentence. To be eligible for imposition of the death sentence (death-eligible), a person must: 1) have been found guilty of murder in the first degree; 2) have been a principal in the first degree or have engaged another to commit the murder for remuneration or the promise of remuneration; 3) have been 18 years of age or older at the time the murder was committed; 4) not have been mentally retarded within the meaning of the statute. In addition, at least one of the aggravating circumstances enumerated in § 413 must be shown to exist, and the State must have notified the defendant in writing at least 30 days prior to trial that it intended to seek a sentence of death and advised the defendant of each aggravating circumstance upon which it intended to rely.

If a defendant is found to be death-eligible, the sentencing authority then determines whether any mitigating circumstances exist, and weighs the aggravating circumstances against the mitigating circumstances. If the sentencing authority finds that the aggravating circumstances outweigh the mitigating circumstances, the penalty is death; otherwise, it is life imprisonment or life imprisonment without parole.

Maryland Rule 4–343 requires that the findings and determinations of the sentencing authority in a capital case be made in writing in accordance with a prescribed form. Section I of the form provides for a finding on the question of whether the defendant was a principal in the first degree or the procurer of a murder for hire. Section II provides for a finding of whether the defendant was mentally retarded at the time of the murder. Section III sets forth the findings with respect to the existence of one or more aggravating circumstances. Section IV deals with findings concerning the existence of mitigating circumstances, and Section V relates to weighing of aggravating against mitigating circumstances. Section VI provides for the entry of the verdict of death or life imprisonment, and Section VII provides for the determination of whether a life sentence shall be with or without parole.

Thus, according to the death penalty statute and the Rules of Procedure adopted to implement the statute, the sentencing

authority proceeds logically to first determine whether the defendant is eligible for the imposition of the death sentence (Sections I, II, and III of the form), and reaches the determination of whether the defendant should be sentenced to death (Sections IV and V) only if that person is found to be death-eligible.

The jury in this defendant's case never proceeded to the point of considering the existence of aggravating or mitigating circumstances, or weighing aggravating circumstances against mitigating circumstances. It decided that the defendant was not death-eligible, because he was mentally retarded at the time of the murder. The question then, stated in the light of the particular facts of this case, is whether the legislature intended to impose the 25–year eligibility limitation on a defendant who was not death-eligible, or whether it intended to impose that limitation only upon those defendants who fit every criteria of eligibility for the imposition of the death penalty, but are spared that ultimate sanction by the sentencing authority. We believe the legislature intended the latter.

As the defendant points out, accepting the interpretation advanced by the State would lead to unusual, and perhaps discriminatory results. If the State is correct, the prosecutor could bring about the imposition of the 25–year parole eligibility limitation in any first degree murder case, simply by giving timely notice of his or her intention to seek the penalty of death. If the State had little or no evidence that the defendant was a principal in the first degree, or that an aggravating circumstance existed, it could still achieve its goal of imposing a 25–year limitation simply by giving the notice. Similarly, if the State believed the defendant was mentally retarded at the time of the murder, or that it could not effectively meet the defendant's strong evidence of mental retardation, the State could nevertheless impose the 25–year limitation simply by causing a § 413 proceeding—even one in which it had no reasonable anticipation of proving the defendant to be death-eligible. We entertain serious doubts that the legislature intended such results. It seems much more likely that the

legislature intended the 25–year limitation to apply to a specific and identifiable class of defendants, those who were death-eligible and who went through a § 413 proceeding involving the weighing of aggravating and mitigating circumstances.

It is of some significance, in the context of this case, that the exclusion of persons who have not attained the age of 18 years or who are mentally retarded from the death-eligible status appears in § 412 of Art. 27, not § 413. Section 412(f)(1) provides, in pertinent part:

If a person found guilty of murder in the first degree was, at the time the murder was committed, less than 18 years old or if the person establishes by a preponderance of the evidence that the person was, at the time the murder was committed, mentally retarded, the person shall be sentenced to imprisonment for life or imprisonment for life without the possibility of parole and may not be sentenced to death.

By amendment to the findings and sentence determination form prescribed by Rule 4–343, this Court decided that the determination of the question of mental retardation should occur after the trial of guilt or innocence, but before the point at which the weighing of aggravating and mitigating circumstances would occur. Placing this determination in the second stage of a two-stage capital proceeding was indicated by the language of § 412(f), which envisions resolution of the question only after a person is found guilty of murder in the first degree, but clearly requires a trial-like proceeding. This Court could, of course, have provided for trifurcated proceeding involving first an adjudication of guilt or innocence, then a determination of death-eligibility, and finally a weighing of aggravating against mitigating circumstances whenever the defendant was found death-eligible. We did not, for we had no desire to further complicate a somewhat difficult proceeding. That the discrete steps of determining 1) whether a person is eligible for imposition of the death penalty and, 2) whether a death sentence should be imposed if the person is eligible are not mechanically divided into separate proceedings does not mean they are not analytically separate. The existence of the sentencing determination form, and the sequential

order of consideration of the issues it prescribes, provide the information necessary to determine whether a jury found life imprisonment because the defendant was not death-eligible or because the aggravating circumstances did not outweigh the mitigating circumstances in the case of a death-eligible defendant. There is, therefore, no necessity to have a trifurcated proceeding to give effect to the classification we believe the legislature intended. A defendant who is given a life sentence because that defendant was not eligible for the imposition of the death penalty faces a limitation of 15 years before consideration for parole; a defendant who is given a life sentence after a full § 413 hearing, that is, after being found eligible for the death sentence and after a weighing of aggravating and mitigating factors, suffers a limitation of 25 years before consideration for parole.

The interpretation we give to Art. 41, § 4–516(c)(2) has the additional benefit of avoiding the constitutional arguments of denial of equal protection of the laws and of due process. As we have pointed out, construing § 4–516(c)(2) to apply only to death-eligible defendants who have received a life sentence after a § 413 hearing involves a clearly rational classification of offenders. Accepting the State's interpretation would, however, result in similarly situated defendants receiving substantially disparate treatment with respect to parole eligibility solely at the option of the prosecutor. The State points out, as did the Court of Special Appeals, that there is no constitutional right to parole. *See Richardson v. State, supra,* 89 Md.App. at 272 n. 9, 598 A.2d 1; *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). But that is not to say that when the State does grant a right to parole it can do so in a way that irrationally discriminates. *See Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (State is not required by federal constitution to provide a right to appellate review, but having done so must not engage in invidious discrimination); *Morrissey v. Brewer,* 408 U.S. 471, 480–82, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972) (parole, whether considered a "right" or simply a "privilege" involves valuable liberty rights that are within the protection of the Fourteenth Amendment).

The State also argues, with some force, that the prosecutor may be granted wide discretion in making decisions that directly impact on the sentence to be imposed upon a defendant if those decisions are not made on the basis of suspect reasons, such as race or religion. *See Wade v. United States,* —— U.S. ——, —— – ——, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992). In view of the interpretation we have given § 4–516(c)(2) of Art. 41, we need not reach these constitutional issues.

## Conclusion

Although our interpretation of the statute benefits the defendant by determining the computation that must be made with respect to his life sentence when his eligibility for parole consideration is calculated, it does not affect the judgments entered below. The trial judge properly denied the defendant's motion to strike the State's notice of intention to seek the penalty of death, and the sentence of life imprisonment was properly entered for the conviction of murder. Accordingly, the judgment of the Court of Special Appeals must be affirmed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.