870 A.2d 196

STATE of Maryland

v.

The Honorable Joseph P. MANCK, et al.

No. 1, Sept. Term, 2004.

Court of Appeals of Maryland.

March 15, 2005.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellant.

Julia Doyle Bernhardt, Asst. Public Defender (Nancy S. Forster, Public Defender, Allison E. Pierce, Asst. Public Defender, Brian M. Saccenti, Asst. Public Defender, on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

This case presents us with the task of determining the scope of this Court's authority to issue prerogatory writs or other extraordinary relief when requested by the State, when the trial court has stricken the Notice of Intention to Seek the Penalty of Death. Based upon our jurisprudence and that of the federal system with respect to its identical powers to issue writs of mandamus or prohibition, we conclude that the State's Petition for Writ of Prohibition, Mandamus, or Other Appro-

priate Extraordinary Relief cannot be granted under the circumstances of this case.

## I. Background

On June 7, 2002, a grand jury in Anne Arundel County indicted Michael Darryl Henry for first degree murder under Section 407 of Article 27 of the Maryland Code [1] for his actions in the death of a fellow inmate at the Maryland House of Correction Annex in Anne Arundel County. On February 3, 2003, the State filed a Notice of Intention to Seek the Penalty of Death (hereinafter "Notice") pursuant to Md.Code (2002), § 2–202(a)(1) of the Criminal Law Article.[2] In the Notice, the State set forth two aggravating factors enumerated in Md. Code (2002), § 2–303(g)(1)(ii) and (vii) of the Criminal Law Article, which provides:

(ii) the defendant committed the murder while confined in a correctional facility;

\*        \*        \*

(vii) the defendant employed or engaged another to commit the murder and the murder was committed under an agreement or contract for remuneration or promise of remuneration.

On May 1, 2003, Henry filed a motion to strike the State's Notice and argued that based on the United States Supreme Court's opinions in *Apprendi v. New Jersey,* 530 U.S. 466, 120

1. Article 27, Section 407 of the Maryland Code provides:

   All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of willful, deliberate and premeditated killing shall be murder in the first degree.

   Section 407 was recodified without substantive change as Md.Code (2002), § 2–201(a) of the Criminal Law Article.

2. Md.Code (2002), § 2–202(a)(1) provides:

   (a) *Requirement for imposition.*—A defendant found guilty of murder in the first degree may be sentenced to death only if:

   (1) at least 30 days before trial, the State gave written notice to the defendant of:

   (i) the State's intention to seek a sentence of death; and

   (ii) each aggravating circumstance on which the State intends to rely.

S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the State constitutionally could not seek to impose the death penalty unless all of the elements of a crime required for the defendant to be eligible for death are considered by the grand jury and contained in the indictment. Henry contended that he would not be eligible for the death penalty because the indictment failed to allege that he was a first degree principal. On June 25, 2004, Judge Joseph P. Manck denied Henry's motion.

At approximately the same time, Judge Pamela J. North of the Circuit Court for Anne Arundel County heard similar arguments in another capital proceeding. In that case, *State v. Kenneth Ernest Abend,* K–02–00506, the State, on May 4, 2002, had filed a Notice of Intention to Seek the Penalty of Death enumerating two aggravating circumstances contained in Section 2–303(g)(1) of the Criminal Law Article.[3] As in the case against Henry, the indictment failed to allege Abend's status as a first degree principal.

Abend filed a motion to strike the State's Notice arguing that the indictment was insufficient to support the Notice because it did not allege that he was a principal in the first degree. On September 2, 2004, Judge North granted Abend's motion and permitted the State to either withdraw its notice and pursue life imprisonment or to re-indict Abend and allege that he was a first degree principal, if the State wanted to continue to seek the death penalty. The State chose to re-indict Abend and did so on September 3, 2004.

On September 28, 2004, Judge Manck reconsidered his earlier denial of Henry's motion and, relying in part on Judge North's analysis in the *Abend* case, granted Henry's motion to strike the State's Notice of Intention to Seek the Penalty of Death. Judge Manck granted a postponement to permit the

---

**3.** The aggravating circumstances alleged against Abend were: (1) the commission of more than one offense of murder in the first degree arising out of the same incident, and (2) the commission of murder while committing a sexual offense.

State time to obtain a new indictment and file a new notice within the required 30–day period prior to trial. On September 29, 2004, rather than obtain a new indictment, the State filed a Petition for Writ of Prohibition, Mandamus, or Other Appropriate Extraordinary Relief with this Court requesting that we direct Judge Manck to vacate his order striking the notice.

On October 4, 2004, we ordered both the State and Henry to file briefs or memoranda addressing the following issues:

1. Does this Court have the authority to grant a writ of prohibition, mandamus or to grant other appropriate extraordinary relief under the circumstances presented herein?

2. Does a judge have any discretion to strike a notice of intention to seek death penalty that is timely filed and conforms to Md.Code, Criminal Law, §§ 2–202(a) and 2–301?

On November 9, 2004, the State and Henry presented oral argument. The following day this Court issued a stay of "all proceedings in the Circuit Court ... pending a decision by this Court."

## II. The Power to Issue Prerogatory or Extraordinary Writs

### A. When Such Writs May Be Issued

In *In re Petition for Writ of Prohibition,* 312 Md. 280, 539 A.2d 664 (1988), our seminal opinion on prerogatory writs authored by Judge William Adkins, we considered this Court's authority to issue prerogatory or extraordinary writs such as writs of mandamus or prohibition. Although there is no express language authorizing the issuance of such writs by this Court as an aspect of our original jurisdiction in the Maryland Constitution, we identified the power to do so as arising out of the Court's appellate jurisdiction. We explained:

The Maryland Constitution is silent as to any mandamus or prohibition power in this Court. The only general statutory

provision dealing with mandamus jurisdiction is [Md.Code (1973, 2002 Repl.Vol.); § 3–8B–01 of the Courts and Judicial Proceedings Article]; it relates only to the circuit courts. Nor is there any express grant of superintending power to this Court. Whether we have, as the highest court in this State, an inherent superintending or supervisory power over the courts below us in the judicial hierarchy, and whether any such power is implicit in Article IV, § 18 of the Maryland Constitution, are questions we reserve for another day. We need not and do not address them today because we hold that under the circumstances of this case we have the power to issue a writ of mandamus or a writ of prohibition in aid of our appellate jurisdiction.

*In re Petition for Writ of Prohibition,* 312 Md. at 292–93, 539 A.2d at 669–70 (citations omitted). Moreover, we stated that:

it is manifestly necessary, to the ends of justice, that there should be a power in special cases to suspend proceedings on the matter appealed from. . . .

*Id.* at 298, 539 A.2d at 672. We recognized that the availability of the writs "in aid of our appellate jurisdiction" has long been established, even if "we almost never exercised the power to issue them," *id.* at 297, 539 A.2d at 672, and then considered what circumstances would properly warrant issuing a writ "in aid of [our] appellate jurisdiction." *Id.* In response to this inquiry, we stated:

[I]t appears that mandamus or prohibition may issue in aid of appellate jurisdiction even though no appellate proceeding is pending in the appellate court, at least where there is some potentiality of eventual appellate review by appeal or by certiorari. . . . If the writ is "necessary to enable . . . [the Court] to exercise appellate jurisdiction" it is in aid of that jurisdiction.

*Id.* at 302–03, 539 A.2d at 675. Thus, we recognized that "by making possible the review of a potentially unreviewable question [writs such as mandamus and] prohibition aided the appellate process." *Id.* at 299, 539 A.2d at 673. These writs are used "to prevent disorder, from a failure of justice, where

the law has established no specific remedy, and where in justice and good government there ought to be one." *Id.* at 307, 539 A.2d at 677, citing *Runkel v. Winemiller,* 4 H. & McH. 429, 449 (Gen. Ct. Oct. Term 1799). The power to issue prerogatory writs is "necessarily incident to this Court, to preserve the usefulness of its appellate jurisdiction. If it were otherwise, cases might arise in which the appeal would be but as a shadow, pending which the substance might be lost." *In re Petition for Writ of Prohibition,* 312 Md. at 298, 539 A.2d at 672, quoting *Thompson v. McKim,* 6 H. & J. 302, 333 (1825).

In *Philip Morris, Inc. v. Angeletti,* 358 Md. 689, 752 A.2d 200 (2000), we determined that mandamus relief should be granted, based upon a petition for interlocutory relief, where a trial judge improperly certified a class action in complex civil litigation about tobacco. *Id.* at 699–700, 752 A.2d at 205–06. Several large tobacco manufacturers and distributors petitioned this Court to vacate the circuit court's certification of two plaintiff classes, current and former users of tobacco products, that claimed to be injured by tobacco use or nicotine addiction and argued that the circuit court grossly abused its discretion in certifying the classes, in violation of the Maryland Constitution and this Court's rules of civil procedure. *Id.* at 699–700, 704, 752 A.2d at 205–06, 208. We noted, however, that class certification normally was only appealable after a final judgment in the underlying case. *Id.* at 714, 752 A.2d at 213–14. *See* Md. Rule 8–131(d) (stating "[o]n appeal from a final judgment, an interlocutory order previously entered in the action is open to review by the Court unless an appeal has previously been taken from that order and decided on the merits by the Court"). Petitioners, therefore, would have had to endure a costly and lengthy trial and the trial court's entry of a final judgment before seeking appellate review of the class certification action. *Philip Morris, Inc.,* 358 Md. at 714, 752 A.2d at 213–14.

We concluded that although the traditional routes of appeal were available, because the parties would have suffered as a result of proceeding to trial based on the assertedly erroneous

certification decision and the potential waste of judicial resources was substantial, this Court's exercise of its appellate jurisdiction at an interlocutory point in the proceedings was warranted. *Id.* We also found that, had there been no such intervention, the expense and delay of the trial would have prejudiced the parties' ability to utilize effectively the appellate process. *Id.* Thus, Judge Raker, speaking for this Court, stated, "Both the public interest and our responsibility in exercising the supreme judicial authority of this State thus compel[led] the exercise of this Court's discretion in [that] extraordinary case." *Id.* at 718, 752 A.2d at 215. Accordingly, we issued the writ.

### B. The State's Right to Appeal in Criminal Cases

The origins in Maryland of the right to appeal in criminal cases are shadowy. Judge Eldridge, examining the State's right to appeal in criminal cases in his dissent in *Cardinell v. State*, 335 Md. 381, 644 A.2d 11 (1994), *overruled by State v. Green*, 367 Md. 61, 785 A.2d 1275 (2001), discovered only one reported pre-Revolutionary War case, *Jenifer v. Lord Proprietary*, 1 H. & McH. 535 (Provincial Court 1774), which touched upon the right to appeal in criminal cases generally. In that case, Daniel Jenifer, the former Sheriff of Charles County, was convicted of receiving unlawful fees as Sheriff and was fined the value of the fees plus 5,000 pounds of tobacco. *Id.* at 535–36. He filed an appeal in the Provincial Court, and argument was heard during the Court's April Term, 1770. *Id.* at 536–37. Attorney General Jenings contended that there was no right to appeal in criminal cases under English statutes, common law, or the Act of 1713;[4] and as such, Jenifer's appeal should have been dismissed. *Id.* at 536–38. Although the Court continued the case until its September Term, 1774,

---

**4.** Ch. 4 of the Acts of 1713 related to appeals and writs of error from judgments of the Provincial Court and county courts. Section 5 of the statute provided:

[t]hat all appeals made in manner aforesaid shall be admitted and allowed by the superior courts to whom such appeal shall be made, as aforesaid, in nature of a writ of error ...

1713 Md. Laws, Chap. 4, § 5.

it ultimately dismissed the appeal, apparently holding that no appeal would lie. *Id.* at 538.

After the Revolution, Ch. 87 of the Acts of 1785, Section 6 granted the "full power and right to appeal to any party or parties aggrieved by any judgment or determination of any county court in any civil suit or action, or any prosecution for the recovery of any penalty, [or] fine. . . ." 1785 Md. Laws, Chap. 87, § 6. The first reported criminal case after the Act of 1785 appears to be *Peter v. The State,* 4 H. & McH. 3 (General Court 1797), in which the General Court permitted an appeal by the defendant, on writ of error, who argued that the indictment on its face violated a statute. *Id.* Without opinion, the Court reversed the judgment of the County Court, evidently finding that the writ of error would lie and that the defendant's position was meritorious. *Id.* at 3–4. Five years later, in *Cummings v. The State,* 1 H. & J. 340 (General Court 1802), the availability of a writ of error was argued again before the General Court, but the writ was quashed on a procedural ground. *Id.* at 341, 344.

This Court's first discussion of this issue in a reported opinion was in *Queen v. The State,* 5 H. & J. 232 (June Term 1821), in which we held that an appeal or writ of error was authorized in a criminal case to review a question of law apparent on the record even though a bill of exceptions was not authorized. *Id.* at 233–34. In its rationale, this Court stated that "[t]he act of 1785 does not give a bill of exceptions in criminal cases there enumerated," but that, "if error appeared on the record," then "the Legislature gave the party complaining an election to carry up the case either by writ of error or appeal. . . ." *Id.* at 234. In the December 1821 Term, this Court in *The State v. Buchanan, et al.,* 5 H. & J. 317 (1821), also determined that the State could pursue a writ of error where the county court quashed the indictment. *Id.* at 329–30.

The extensive right of appeal contained in the Act of 1785 was maintained in later statutes. Code (1860), Art. 5, Section 3, permitted "any party" to appeal to the Court of Appeals in

"any prosecution for the recovery of any penalty [or] fine," and Section 4 provided that "writs of error may be sued out in civil or criminal cases . . . ." Code (1860), Art. 5, § 3. Ch. 316 of the Acts of 1872 added a new section to Article 5 of the Code, which provided as follows:

Sec. 2. In all trials upon any indictment or presentment in any court of this State having criminal jurisdiction, it shall be lawful for any party accused, or for the State's Attorney, on behalf of the State of Maryland, to except to any ruling or determination of the court, and to tender to the court a bill of exceptions, which shall be signed and sealed by the court . . .; and the party tendering such bill of exceptions, may appeal from such ruling or determination to the Court of Appeals . . . . [5]

1872 Md. Laws, Chap. 316, § 2. This extensive general right of appeal in criminal cases granted by statute to both the defendant and the State continued until 1957. *See, e.g.,* Code (1888), Art. 5 §§ 77 and 78; Code (1924), Art. 5 §§ 86 and 87; Code (1939), Art. 5 §§ 86–88; Code (1951), Art. 5, §§ 86–89. Nevertheless, although the State appeared to possess broad appellate rights under the statutes, the general tendency of decisions by this Court was to preclude a right to appeal by the State. *See, e.g., State v. Adams,* 196 Md. 341, 350–51, 76 A.2d 575, 578–79 (1950) (dismissing the State's appeal because of a lack of explicit statutory authority); *State v. Lingner,* 183 Md. 158, 165, 36 A.2d 674, 677 (1944) (holding that the State had no right to appeal a verdict based on the denial of its demurrer to the defendant's motion); *State v. Jones,* 182 Md. 368, 369–70, 34 A.2d 775, 776 (1943) (holding that the State could not appeal from a motion to quash because it was a pretrial motion, and therefore, the trial court's ruling did not

---

5. Although the statute would appear to have permitted the State to appeal from an acquittal in criminal cases, the common law of Maryland has always precluded the State from doing so. *See State v. Adams,* 196 Md. 341, 350–51, 76 A.2d 575, 578–79 (1950) (detailing the history of the State's inability to appeal from acquittals under the common law and holding that absent a statute to the contrary, the common law forbade the State from appealing from judgments in favor of the defendant).

appear in the record transmitted to the Court of Appeals); *State v. Rosen*, 181 Md. 167, 169, 28 A.2d 829, 829 (1942) (holding that the State may not file a bill of exceptions [6] where the defendant does not do so as well); *State v. Shields*, 49 Md. 301, 302 (1878) (same).

The 1957 recodification of the Maryland Code restricted the State's right to appeal in criminal cases and for the first time codified the common law prohibition against State appeals from acquittals in criminal cases. Chapter 399 of the Acts of 1957, Section 14 provided:

> The State may appeal to the Court of Appeals from a final order or judgment granting a motion to dismiss, or quashing or dismissing any indictment, information, presentment or inquisition in a criminal action, but the State shall have no right of appeal in any criminal action where the defendant has been tried and acquitted.

Md.Code (1957), Art. 5 § 14. The language of this section remained unchanged, except for the change from the "Court of Appeals" to the "Court of Special Appeals" by Chapter 12 of the Acts of 1966, Section 1, until the recodification in 1973.

The 1973 recodification of Article 5, Section 14 as Md.Code (1973), § 12–302(c) of the Courts and Judicial Proceedings Article retained the majority of the language in Article 5, Section 14, but excised the clause prohibiting the State's access to appellate review where the defendant was tried and convicted. 1973 Md. Laws, Chap. 2, 1st Sp. Sess., § 1. Section 12–302(c) of the Courts and Judicial Proceedings Article provided:

> In a criminal case, the State may appeal only from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition in a criminal case.

---

**6.** Black's Law Dictionary defines "bill of exceptions" as:

1. A formal written statement—signed by the trial judge and presented to the appellate court—of a party's objections or exceptions taken during trial and the grounds on which they are founded. Black's Law Dictionary, "bill of exceptions" (8th Ed.2004).

Md.Code (1973), § 12–302(c) of the Courts and Judicial Proceedings Article. The Revisor's Note explained that the language concerning the State's inability to appeal from an acquittal was deleted because "the State may only appeal in the limited situations set forth in [Section 12–302(c) of the Courts and Judicial Proceedings Article] in any event." 1973 Md. Laws, Chap. 2, 1st Sp. Sess., § 1, Revisor's Note.

In 1976, the General Assembly augmented the State's right to appeal in criminal cases to permit an appeal from the failure to impose a mandatory sentence. Chapter 49 of the Acts of 1976, Section 1[7] revised the language of Section 12–302(c) to state:

In a criminal case, the State may appeal [only]:

(1) from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition [in a criminal case]; and

(2) from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code.

1976 Md. Laws, Chap. 49, § 1. The General Assembly again extended the ability of the State to appeal in criminal cases in 1982 when it enacted Section 12–302(c)(3)(i) of the Courts and Judicial Proceedings Article, which provided that:

In a case involving a crime of violence as defined in § 643B[8] of Article 27, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights.

---

7. This enactment also provided the State with a limited ability to appeal from criminal cases in district court by amending Md.Code (1973, 1976 Supp.), § 12–401 of the Courts and Judicial Proceedings Article.

8. Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 643B provided for mandatory sentences for crimes of violence.

1982 Md. Laws, Chap. 493. Seven years later, the General Assembly broadened the State's right to appeal to include "cases under §§ 286 and 286A of Article 27"[9] under Section 12–302(c)(3)(i) of the Courts and Judicial Proceedings Article. 1989 Md. Laws, Chap. 5, § 1.[10] Finally, in Chapter 141 of the Acts of 2003, Section 1, the General Assembly enacted another expansion of the State's right to appeal in criminal cases by revising Section 12–302(c)(2) to permit the State to appeal where it "alleges that the trial judge imposed or modified a sentence in violation of the Maryland Rules." 2003 Md. Laws, Chap. 141, § 1. Thus, Section 12–302(c) of the Courts and Judicial Proceedings Article currently provides:

(c) *Criminal Case.*—In a criminal case, the State may appeal as provided in this subsection.

(1) The State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition.

(2) The State may appeal from a final judgment if the State alleges that the trial judge:

(i) Failed to impose the sentence specifically mandated by the Code, or

(ii) Imposed or modified a sentence in violation of the Maryland Rules.

(3)(i) In a case involving a crime of violence as defined in § 14–101 of the Criminal Law Article, and in cases under §§ 5–602 through 5–609 and §§ 5–612 through 5–614 of the Criminal Law Article, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights.

---

**9.** Md.Code (1957, 1992 Repl.Vol.), Art. 27 §§ 286 and 286A provided for criminal penalties for the possession of controlled substances.

**10.** In 2002, Chapter 213 of the Acts of 2002, Section 6 changed the references to former Article 27 to be references to the Criminal Law Article.

Md.Code (1973, 2002 Repl.Vol., 2004 Cum.Supp.), § 12–302(c) of the Courts and Judicial Proceedings Article.

During this period in which the statutory bases for the State's right to appeal in criminal cases was in flux, this Court was called upon to address its common law roots. In 1994, in *Cardinell v. State*, 335 Md. 381, 644 A.2d 11 (1994), *overruled by State v. Green*, 367 Md. 61, 785 A.2d 1275 (2001), the State appealed from the trial court's grant of the defendant's untimely motion for revision of sentence under Maryland Rule 4–345(b).[11] *Cardinell*, 335 Md. at 383, 644 A.2d at 12. This Court determined that the State possessed a common law right to appeal in criminal cases and that the language of Section 12–302(c) of the Courts and Judicial Proceedings Article did not reflect a clear intent by the Legislature to abrogate the common law. *Id.* at 394, 644 A.2d at 17.[12] The Court examined the legislative history of the section, and its predecessors, and concluded that there was no evidence that the General Assembly intended "to strip the State of the right to appeal." *Id.* at 396, 644 A.2d at 18. The Court examined the Revisor's Note to Section 12–302 of the Courts and Judicial Proceedings Article and interpreted its statement that

---

**11.** Md. Rule 4–345(b) (1994) provided:

(b) Modification or Reduction—Time for.—The Court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (e) of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

The language of Md. Rule 4–345(b) is identical today.

**12.** This opinion was filed nine years before the current language of Section 12–302(c)(2) of the Courts and Judicial Proceedings Article was added statutorily granting the State the right to appeal from a trial court's improper imposition or modification of a sentence in violation of the Maryland Rules. Today, the State may appeal from such a determination by a trial court by statute. Md.Code (2002, 2004 Cum. Supp.), § 12–302(c)(2) of the Courts and Judicial Proceedings Article.

"the State may only appeal in the limited situations set forth in the section in any event" to mean that the section was not intended to be "an absolute limitation on the State's right to appeal." *Id.* at 395, 644 A.2d at 18. The Court reasoned that recodification of statutes is presumed to be for the purpose of clarity rather than to change their meaning. *Id.* at 407, 644 A.2d at 24. Moreover, the Court stated that the deletion of "only" from the Section in 1976 further indicated the legislature's intention to codify the State's right to appeal in certain cases, but not to preclude its appeal in the situations not enumerated. *Id.* Therefore, the *Cardinell* court determined that the State possessed "a continuing common law right to appeal an action that was outside the jurisdiction of the lower court." *Id.* at 398, 644 A.2d at 19.

In 2001, we had the opportunity to revisit the issue of the scope of the State's ability to appeal in criminal cases in *State v. Green,* 367 Md. 61, 785 A.2d 1275 (2001). In that case, the State appealed from the granting "of a criminal defendant's untimely filed motion to revise his statutorily mandated sentence," essentially the same issue raised in *Cardinell. Id.* at 65–66, 785 A.2d at 1277. Relying upon recent cases construing the appeals statutes, Chief Judge Bell, writing for this Court, stated that "questions of appealability have today become entirely governed by statutes." *Green,* 367 Md. at 77, 785 A.2d at 1284, citing *Prince George's County v. Beretta U.S.A. Corp.,* 358 Md. 166, 173, 747 A.2d 647, 651 (2000) (dismissing an appeal from the trial court's judgment reviewing a decision of the Prince George's Human Relations Commission because neither the specific statutory language at issue nor any other provision of law expressly authorized it); *Gisriel v. Ocean City Board of Supervisors of Elections,* 345 Md. 477, 489, 693 A.2d 757, 763 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998) (explaining that the enactment of Section 12–301 abrogated prior law, and holding that an appeal was not authorized under the general grant of the right to appeal contained in Section 12–301 because a more specific provision applied). Moreover, we again expressed our concern that "the invocation of common

law principles in an area specifically addressed by the General Assembly might violate the constitutional separation of powers principle." *Green*, 367 Md. at 77, 785 A.2d at 1284. Furthermore, we stated "[a]lthough the appeals statutes . . . contain no specific words of abrogation . . . the appeals statutes repealed and replaced the prior statutory scheme." *Id.* at 78, 785 A.2d at 1284. "In addition, the structure of the appeals statutes, *i.e.,* conferring a broad general grant of appeal subject to enumerated limitations, further suggests that they are meant to represent the entire subject matter of the law of appeals." *Id.* Therefore, we overruled *Cardinell* and recognized that the State's right to appeal in criminal cases was based entirely on statute. *Id.* at 84, 785 A.2d at 1288.

### C. May the Writ Issue Where the State Would Otherwise be Unable to Seek Appellate Review?

Restrictions on the State's ability to appeal, presently contained in Md.Code (1973, 2002 Repl.Vol.), § 12–301(c) of the Courts and Judicial Proceedings Article, have been strictly construed against the State. *See Derry v. State*, 358 Md. 325, 337–38, 748 A.2d 478, 485 (2000) (dismissing the State's appeal from an order suppressing evidence for violation of the Maryland Wiretapping and Electronic Surveillance Act because it did not satisfy the terms of the statute); *State v. Anderson*, 320 Md. 17, 26, 575 A.2d 1227, 1231 (1990) (dismissing the State's appeal under Section 12–302(a) based upon a judgment of the circuit court exercising its appellate jurisdiction over the District Court); *State v. Pike*, 287 Md. 120, 123–24, 410 A.2d 1079, 1081 (1980) (dismissing the State's appeal from an order barring further prosecution of the defendant on double jeopardy grounds because it did not fall into a category defined in Section 12–302(c)).

■ As set out *supra*, Section 12–302(c) of the Courts and Judicial Proceedings Article provides that the State has a limited right to appeal in criminal cases. Unless the issue presented may properly be categorized as one of the actions

enumerated in the statute, the State has no power to seek appellate review.

■ The trial court's decision to strike the State's Notice of Intention to Seek the Penalty of Death cannot be characterized as falling under any of the provisions of Section 12–302(c). It does not grant a motion to dismiss or quash or dismiss the indictment against Henry, nor has Judge Manck failed to impose a mandatory sentence or imposed or modified a sentence in violation of the Rules. Clearly, Judge Manck's decision is not appealable under Section 12–302(c)(3)(i) because it does not exclude evidence or require the return of property in violation of the Federal or State Constitutions or the Maryland Declaration of Rights. Therefore, the State has no right to appeal from Judge Manck's decision to grant Henry's motion to strike the State's Notice.[13]

■ In the present case, the State, acknowledging that it has no right to appeal the grant of the motion to strike, has asked for this Court, nevertheless, to grant relief through the process of issuing a prerogatory writ. A review of this Court's opinions reveals that the State has never secured mandamus relief in a criminal case where it did not have the statutory right to appeal. *See, e.g., State v. Tobias,* Order, Sept. Term 1992 (per curiam) (denying the State's petition for extraordinary writ in a criminal case). One implicit rationale may be, as the Supreme Court has stated repeatedly, "[m]andamus, of course, may never be employed as a substitute for appeal in derogation of" the policies behind limiting the State's access to appellate review. *Will v. United States,* 389 U.S. 90, 97, 88 S.Ct. 269, 274, 19 L.Ed.2d 305, 311 (1967), citing *Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); *Parr v. United States,* 351 U.S. 513, 520–21, 76 S.Ct. 912, 917, 100 L.Ed. 1377, 1385 (1956); *Bank of Columbia v.*

---

**13.** If there is to be any change in the law governing the State's ability to seek appellate review in criminal cases, the General Assembly should make that change. For this Court to expand the State's right to appeal in criminal cases beyond the statutory limits would violate the separation of powers doctrine.

*Sweeny,* 1 Pet. 567, 569, 7 L.Ed. 265, 266 (1828); *see also In re Petition for Writ of Prohibition,* 312 Md. at 302, 539 A.2d at 674–75, quoting *Cohens v. Virginia,* 6 Wheat. 264, 397, 5 L.Ed. 257, 289 (1821) ("a writ of prohibition or any other similar writ [is] in the nature of appellate process."). In *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), the Supreme Court considered the propriety of a writ of mandamus issued by the Court of Appeals for the Seventh Circuit to compel a United States District Judge to vacate a portion of a pretrial order requiring the Government to furnish certain information about witnesses. *Id.* at 91–92, 88 S.Ct. at 271–72, 19 L.Ed.2d at 308. The Court acknowledged that Congress had limited the State's right to appeal in criminal cases and that mandamus should never be used as a substitute for appeal in violation of statutory limits. *Id.* at 97, 88 S.Ct. at 274, 19 L.Ed.2d at 311–12. The Court further noted that there have been specific instances where mandamus has been issued on behalf of the Government where it has been totally deprived of the right to initiate a prosecution or where the trial court exceeded its authority and denied the Government the proper results of a valid conviction, but that a writ has never successfully been applied to interlocutory procedural orders in criminal cases that do not have the effect of a dismissal. *Id.* at 97–98, 88 S.Ct. at 275, 19 L.Ed.2d at 311–12. Therefore, considering the strong policies disfavoring appeals by the Government in criminal cases and the Court's refusal to use mandamus as a means of circumventing the limits on the Government's right to appeal in criminal cases, the United States Supreme Court held that the Court of Appeals for the Seventh Circuit was not justified in its "invocation of the extraordinary writ in [that] case." *Id.* at 98, 88 S.Ct. at 275, 19 L.Ed.2d at 312.

Concomitantly, because of the strictures placed on our jurisdiction throughout the Maryland Code, we cannot use the writ "in aid of appellate jurisdiction" to confer appellate jurisdiction on the Court. To use the writ to *create* jurisdiction beyond the boundaries set forth in statutes would essentially vest four members of this Court with the power to define

what can be appealed by the State merely by identifying the judicial act under consideration as extraordinary. We cannot confer upon ourselves appellate jurisdiction under the guise of being "in aid of appellate jurisdiction." Therefore, we hold that because the State cannot appeal Judge Manck's grant of Henry's motion to strike the State's Notice in the first instance, we may not issue a prerogatory writ to permit appellate review beyond the limitations set forth by statute.

In so declaring, we recognize that any language to the contrary contained in *dicta* in *In re Petition for Writ of Prohibition*, 312 Md. 280, 539 A.2d 664 (1988), is hereby disapproved. In *In re Petition for Writ of Prohibition*, this Court stated, "If the use of a writ is 'necessary to enable ... [the Court] to exercise appellate jurisdiction' it is in aid of that jurisdiction." *Id.* at 304, 539 A.2d at 675–76. After a careful examination of the law of both our sister states and the federal courts, we find that Maryland was singular in its discussion of the possibility of permitting a writ of prohibition to issue "in aid of appellate jurisdiction" in circumstances of a criminal case where appellate review could not be exercised. *See, e.g., In re: Bellsouth Corp.*, 334 F.3d 941, 951–52 (11th Cir.2003) (stating that "[m]andamus is not to be used as a subterfuge to obtain appellate review that is otherwise foreclosed by law."); *Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed.Cir.2002) (holding that "extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial"); *Brown & Williamson Tobacco Corp. v. District Court of the Muscogee Nation*, 5 Okla. Trib. 447, 449 (Muscogee 1998) (stating that mandamus cannot be used to expand the statutory scope of interlocutory appeals); *United States v. McVeigh*, 106 F.3d 325, 333 (10th Cir.1997) (holding that mandamus should never be employed to extend the Government's right to appeal and thereby create appellate jurisdiction); *United States v. Margiotta*, 662 F.2d 131, 134 n. 8 (2d Cir.1981) (holding that because mandamus cannot be used to circumvent the limitations of the Government's statutory right to appeal in criminal cases, the court may not issue it to accomplish such a purpose); *State v. Stirba*, 972 P.2d 918,

920 (Utah.App.1998) (stating that the State is limited in appellate rights by statute and mandamus cannot be used to circumvent that restriction); *Tyson v. State,* 593 N.E.2d 175, 179–80 (Ind.1992) (stating that an extraordinary writ will not issue "in aid of appellate jurisdiction" where there is no implication of the court's appellate jurisdiction); *State v. Lewis,* 188 W.Va. 85, 422 S.E.2d 807, 816–17 (1992); *Ex Parte Nice,* 407 So.2d 874, 877 (Ala.1981) (noting that mandamus should not be a substitute for appeal and can only issue "in aid of appellate jurisdiction" if the petitioner has the right to appeal). Any reliance by the State, then, on this language is misplaced.

### III. Conclusion

Because we find that a prerogatory writ may not properly issue in aid of our appellate jurisdiction in the present case, we dismiss the State's petition for extraordinary relief.[14]

*PETITION FOR WRIT OF PROHIBITION, MANDAMUS OR OTHER EXTRAORDINARY RELIEF DISMISSED. COSTS TO BE PAID BY PETITIONER.*

WILNER, CATHELL and HARRELL, JJ., Dissent.

Dissenting Opinion by HARRELL, J. which WILNER and CATHELL, JJ., Join.

I dissent. At the outset, I must give the devil (the Majority opinion) its small due. There is little with which I quarrel regarding the procedural narrative in Part I of the Majority opinion. I note, however, that the record does not support the Majority's assertion that Judge North's grant of the Motion to

---

14. Our holding does not preclude our issuing a prerogatory writ in a criminal case in the proper circumstances. Certainly circumstances may arise in a criminal context in which the issuance of a writ may be "in aid of our appellate jurisdiction." *See Doering v. Fader,* 316 Md. 351, 361–62, 558 A.2d 733, 738 (1989) (recognizing our ability to issue the writ if the defendant were the petitioner); *see also McKaney v. Foreman,* 209 Ariz. 268, 100 P.3d 18, 23 (2004) (granting a defendant's petition for a "special action," a statutorily defined action, in a capital prosecution).

Strike in Abend's case (and the reasoning therefor) was only "part" Maj. op. at 585–86, 870 A.2d at 198–99 of the basis for Judge Manck's reconsideration of his denial of Henry's Motion to Strike and ultimate grant of that motion. It appears rather that Judge Manck's conversion was incited solely by Judge North's ruling in the Abend case.

The misguided, but dextrous, explanation for the Majority opinion's ultimate conclusion begins in its Part II, A with the omission from the recitation of what the Court said in *In re Writ of Prohibition* of the following passages allowing for the availability of the prerogative writs where a lower court's action is taken in a considered and unauthorized manner designed to frustrate a proper and accepted avenue of appellate review:

> A lower court which thus exceeds its power ... must be bridled by a court of last resort. Were it otherwise, mandates of the General Assembly could be defied with impunity and the only protection of the public would be the tortuous process of judicial removal which would not have the effect of correcting the specific error. Therefore, *if there were no right of appeal in this case,* we would have no hesitancy in saying that we would act by issuance of the writ of prohibition.

312 Md. 280, 296, 539 A.2d 664, 671–72 (1988) (citations omitted) (emphasis added);

> The writ of mandamus is an aid to the appellate process, because by it, the appellate court directs an inferior tribunal to take some action so its judicial decision may be reviewed on appeal.

*Id.* at 300, 539 A.2d at 673 (citations omitted); and

> If the use of a writ is "necessary to enable ... [the Court] to exercise appellate jurisdiction" it is in aid of that jurisdiction.

*Id.* at 304, 539 A.2d at 675–76.

The assumedly strategic omission of the above is explained much later in the Majority opinion when the Majority dispatches all such notions, damned as dicta, by sweeping them

aside as disapproved. Maj. op. at 599–600, 870 A.2d at 207. It is only through this disavowal of those portions of Judge Adkins' opinion for the Court in *In re Writ of Prohibition,* which from the other side of its mouth the Majority otherwise praises as the "seminal opinion" Maj. op. at 586–87, 870 A.2d at 199 on the topic, that the Majority is able to justify its constraint on the Court's proper exercise of the discretion clearly vested in it.[1]

I.

The Court in *In re Writ of Prohibition* noted the role of the prerogative writs as a method for preserving the ability to secure judicial review of an issue or decision that may not be reviewable ordinarily. *Id.* at 299, 539 A.2d at 673. In further-ance of that goal, the Court determined that "mandamus or prohibition may be used as an aid to appellate jurisdiction, even though there is no appeal pending in an appellate court, and even though no immediate appeal is possible." *Id.* at 301, 539 A.2d at 674. My review of the case law indicates that the writs also may be invoked as a failsafe mechanism in situations where a party has been deprived improperly of its ability effectively to utilize the appellate process.

Thus, even where a party possesses no ultimate right to appeal, we nonetheless acknowledged that extraordinary relief may be appropriate. In *In re Writ of Prohibition,* the State filed a petition for a writ of prohibition after a trial judge, convinced that the jury's verdict was against the weight of the evidence in a criminal trial, granted the defendant's request for a new trial. 312 Md. at 283–84, 539 A.2d at 665–66. The State argued that extraordinary writ relief was necessary at that juncture not only because the judge exceeded his authori-

---

1. It is ironic, at the least, that the four member majority in the present case expresses its alarm that a bare majority of the Court may impose its inferentially wrong-headed view of the law on our State (*See* Maj. op. at 599, 870 A.2d at 207—"To use the writ to create jurisdiction beyond the boundaries set forth in statutes would essentially vest four members of this Court with the power to define what can be appealed by the State merely by identifying the judicial act under consideration as extraordinary.") (emphasis deleted).

ty but because, if the defendant was retried and acquitted, the State would have no right of appeal to have reviewed the decision to grant a new trial in the first place. *Id.* at 285, 539 A.2d at 666. After determining that the Court possessed authority to issue a writ in aid of its appellate jurisdiction, the Court concluded that in situations where a party may never be able to obtain direct appellate review, the writ aided the appellate process "by making possible the review of a potentially unreviewable question." *Id.* at 299, 539 A.2d at 673. The Court reviewed several decisions from other jurisdictions in which the extraordinary writs were exclusively within the appellate jurisdiction of courts of last resort, and concluded that "[i]f the use of a writ is 'necessary to enable ... [the Court] to exercise appellate jurisdiction' it is in aid of that jurisdiction." *Id.* at 304, 539 A.2d at 675 (citations omitted). In the case before it, the Court found that, because the trial court's actions threatened to eliminate completely the State's ability to obtain appellate review of the trial judge's decision to grant a new trial, extraordinary relief was an available mechanism to be utilized to restrain a lower court that acted in excess of its authority. *Id.* at 304–05, 539 A.2d at 675–76. The Court, however, was not persuaded that the circumstances of the case were so "drastic" as to justify extraordinary relief, and ultimately declined to issue a writ. *Id.* at 328–29, 539 A.2d at 688.

I have no quarrel with Part II, B of the Majority opinion. It arrives at the correct destination. Section 12–302(c) of Md.Code, Courts and Judicial Proceedings Article, severely limits the State's right to seek appellate review in criminal cases. One of those permitted instances is when an indictment is dismissed or quashed. Md.Code, Cts. & Jud. Proc., § 12–302(c)(1). The trial judge here, in concert with Henry's counsel, skated around this appellate right and consciously set out to frustrate the State's right to appeal and this Court's ability to declare the law on a novel issue in an area of grave public and legal importance.

## II.

In this case, Judge Manck found that the indictment in Henry's case, on its face, was legally insufficient to support a prosecution for and sentence of death. Instead of dismissing the indictment, however, Judge Manck, as requested by Henry, struck the Notice, leaving the indictment to be pursued as a non-capital prosecution or, inferentially, forcing the State to seek a new or amended indictment alleging first degree principalship if it wished to maintain a capital prosecution. The distinction between striking the Notice on one hand and dismissal of the indictment on the other is of paramount importance to my analysis of the issues in the present case. As Judge North alluded to in her opinion striking the notice in Abend's case, the State may not appeal an order striking a notice.[2] Maryland law allows the State to appeal in criminal cases only in extremely limited circumstances, a point well made by the Majority opinion. These circumstances include when a trial judge improperly excludes evidence or requires return of seized property in certain prosecutions; when a trial judge fails to impose a statutorily mandated sentence; and, when there is "a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition." Md.Code (1973, 2002 Repl.Vol.), § 12–302(c) of the Courts and Judicial Proceedings Article. The striking of a notice does not come within any of these statutory authorizations. It is not a final judgment, and does not have the effect of dismissing a prosecution, but rather limits the availability of punishment in the event of conviction.

---

**2.** This is unlike the federal system where the striking of a notice of intent to seek the death penalty may be appealed immediately by the Government. *See U.S. v. Acosta–Martinez,* 252 F.3d 13, 16–17 (1st Cir.2001) (finding that "[b]y striking a statutorily authorized penalty, the district court effectively dismissed a significant portion of the counts against the defendants—the type of order appealable under" the Criminal Appeals Act, 18 U.S.C. § 3731 (2004)). Partly because of this dissimilarity with our State system, I am unpersuaded that the federal cases sprinkled around the Majority opinion at 598–600, 870 A.2d at 206–07 have much guidance to offer in deciding the fundamental Maryland State law issues present in this case.

Had Judge Manck dismissed Henry's indictment, however, such an order would have been appealable immediately by the State.

In the event that Judge Manck erred in striking the Notice, this Court is empowered to issue a writ of mandamus vacating an otherwise unappealable order and reinstating the Notice in Henry's case. When a lower court removes what should be an otherwise appealable action from the possibility of direct appellate review by improperly classifying or labeling the action taken in a way that is not appealable, this Court reserves the right to intervene to remedy the situation. Such a procedure, I believe, is within the very heart of what is meant by "in aid of our appellate jurisdiction." [3]

In order to determine whether mandamus relief is appropriate in this case, one must determine whether the trial judge had the authority and discretion to strike a notice of intention to seek the death penalty were he (or she) to conclude that the indictment is legally insufficient, on its face, to support a sentence of death. I turn first to the statutory scheme of § 2–202(a)(1) in order to determine the circumstances under which a judge properly may strike a notice.

When the State intends to pursue capital punishment in a first degree murder prosecution, it must provide notice to the defendant of that reservation or election. Md.Code (2002), § 2–202(a)(1).[4] The notice need fulfill only two statutory

---

**3.** The Majority opinion's avoidance of superintending the trial judge's action in the present case is all the more baffling when one considers how, only a few months ago, the Court discovered, apparently for the first time, and asserted its "inherent supervisory authority over the administration of justice in Maryland courts." *See Archer v. State,* 383 Md. 329, 360, 859 A.2d 210, 229 (2004).

**4.** Section 2–202(a)(1) provides:
§ 2–202. [Murder in the First Degree]—Sentence of death
(a) *Requirement for imposition.*—A defendant found guilty of murder in the first degree may be sentenced to death only if:
   (1) at least 30 days before trial, the State gave written notice to the defendant of:
      (i) the State's intention to seek a sentence of death; and
      (ii) each aggravating circumstance on which the State intends to rely.

requirements. First, it must be timely. The statute mandates that written notice be given to the defendant "at least 30 days before trial." *Id.* Second, the notice must list "each [statutory] aggravating circumstance on which the State intends to rely."[5] *Id.* § 2–202(a)(1)(ii). The universe of available aggravating circumstances is outlined in § 2–303. The capital punishment statutory scheme provides no direct authority for a trial judge to strike a notice for any reason other than failure to fulfill the statutory requirements of § 2–202(a)(1).

The notice requirement of § 2–202(a)(1) was adopted as part of Maryland's reinstatement of the availability of capital punishment in the State after the prior statutory scheme was deemed unconstitutional in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Although the Supreme Court had not ruled explicitly in *Furman* that a notice provision was required,[6] the Chief Legislative Officer to then Governor Blair Lee III stated that the administration "felt that Due Process requirements necessitate such a provision."

---

5. If a defendant in a first degree murder prosecution is found guilty, and the notice was timely filed, a separate sentencing proceeding is held to determine whether the defendant should be put to death. Md.Code (2002), § 2–303(b). In this sentencing phase, a jury (or judge, if the defendant waives the right to sentencing by a jury) first considers whether any of the aggravating factors listed in the notice exists beyond a reasonable doubt. *Id.* § 2–303(g)(1). If the court or jury finds any aggravating factor to exist beyond a reasonable doubt, the sentencing authority then determines whether any mitigating circumstances exist based on a preponderance of the evidence. *Id.* § 2–303(h)(2). Only if the court or a unanimous jury ultimately concludes that the aggravating factors outweigh the mitigating circumstances, by a preponderance of the evidence, may the death penalty then be imposed. *Id.* § 2–303(i).

6. The Supreme Court subsequently held that the due process clause of the Fourteenth Amendment is violated when a defendant is sentenced to death without adequate notice that the sentencing authority was contemplating imposition of the death penalty. *Lankford v. Idaho,* 500 U.S. 110, 127–28, 111 S.Ct. 1723, 1732–33, 114 L.Ed.2d 173 (1991) (finding that the judge's imposition of a death sentence, after the State indicated it would not seek the death penalty, denied the court of "the benefit of the adversary process" by depriving the defendant the ability to comment upon whether the death penalty was appropriate in a given case).

Letter from Thomas J. Peddicord, Jr. to the Maryland General Assembly 25 (14 December 1977) (on file at Maryland State law library); *see also Calhoun v. State,* 297 Md. 563, 605, 468 A.2d 45, 64–65 (1983) (finding that the notice requirement is for the defendant's benefit and that the "Supreme Court does not require such notice to protect the constitutionality of the death penalty statute"). Several other states have similar notice requirements.[7] *See, e.g.,* S.C.Code Ann. § 16–3–26 (Law.Co-op.2004) (stating that "[w]henever the solicitor seeks the death penalty he shall notify the defense attorney of his intention to seek such penalty at least thirty days prior to the trial of the case"); *but see People v. District Court, Gilpin County,* 825 P.2d 1000, 1002 (Colo.1992) (finding that due process requirements of notice may be satisfied even though "[t]here is no Colorado statute requiring the prosecutor to give notice of intent to seek the death penalty").

The notice fulfills two main purposes. First, by providing notice by the State to the defendant, should he or she be

---

7. Although some notice statutes, including that of this State, require the notice to be filed by a fixed time before a trial, several states use the date of arraignment or the filing of the indictment as the triggering date. *See, e.g.,* N.Y.Crim. Proc. Law § 250.40 (McKinney 2004) (stating that "[i]n any prosecution in which the people seek a sentence of death, the people shall, within one hundred twenty days of the defendant's arraignment upon an indictment charging the defendant with murder in the first degree, serve upon the defendant and file with the court in which the indictment is pending a written notice of intention to seek the death penalty").

Although a 1993 report commissioned by Maryland Governor William Donald Schaefer discussed an array of possible changes to the notice requirement to increase the length of time of notice to a defendant, the report ultimately recommended retention of the requirement that a notice be received by the defendant no later than 30 days before trial. Governor's Commission on the Death Penalty, The Report of the Governor's Commission on the Death Penalty 222–24 (1993). The Commission rejected calls by the State public defender's office and other defense attorneys either to amend the statute to require the filing of the notice within 30 days of a defendant's indictment, or to increase the timeliness of notice to 90 days before trial. *Id.* at 223–24. The Commission was concerned that an earlier deadline might foster overcharging by prosecutors who would be forced to make premature decisions about whether the death penalty would be appropriate in a particular case. *Id.*

convicted as charged, that it intends to seek the death penalty serves the purpose of "allow[ing] the defendant the opportunity to marshal his defenses in aid of showing why imposition of the death penalty would be inappropriate in his [or her] case." *Grandison v. State,* 341 Md. 175, 222, 670 A.2d 398, 420 (1995). The State's election or reservation may affect profoundly plea negotiations, and almost certainly will influence the capital defendant's trial strategy. This notice, however, is not a part of the charging document and does not in any way supercede or replace the charging document. *Collins v. State,* 318 Md. 269, 297, 568 A.2d 1, 14–15 (1990). If a defendant is served with a notice, it simply communicates that the State intends (but not irrevocably so) to seek the death penalty.

Second, the notice acts as a gateway or threshold requirement that reserves the State's ability to pursue the death penalty at the sentencing phase of the proceeding. Although the filing of a notice foreshadows the potential of an ultimate death sentence, it also acts as a protection to the defendant by alerting him or her to the specific aggravating factors on which the State intends to rely and by triggering the heightened procedural safeguards that accompany a capital prosecution. *See, e.g.,* Md.Code (1973, 2002 Repl.Vol.), § 8–301 of the Courts and Judicial Proceedings Article (increasing the number of peremptory challenges of jurors in a capital prosecution once the notice is filed).

A review of relevant Maryland case law indicates that we have limited the circumstances in which a trial judge may strike a notice. In *Richardson v. State,* 332 Md. 94, 630 A.2d 238 (1993), for example, we concluded that even where there is evidence of a defendant's ineligibility for the death penalty, it is not appropriate for a trial court to strike a notice unless it fails to meet the two statutory requirements of § 2–202(a). *Id.* at 99–100, 630 A.2d at 240–41. In *Richardson,* the defendant argued that, because evidence of his mental retardation was so overwhelming, the State was foreclosed from mounting a capital prosecution and, therefore, the notice filed in his case should be stricken. *Id.* Because the issue of a defendant's mental retardation is to be determined, if required, only after

the guilt/innocence phase of the trial has concluded,[8] the Court reasoned that the defendant's motion to strike was more akin to a motion for summary judgment on the issue of his mental retardation, a mechanism unavailable in a criminal prosecution. *Id.* The Court held that the trial court properly denied the defendant's motion to strike the notice, resolving that any decision on the defendant's mental retardation would be premature until the jury determined the issue of guilt or innocence. *Id.* The Court left undisturbed the Court of Special Appeals's earlier holding that even if a defendant is not eligible for the death penalty, that ineligibility does not grant a trial judge the authority to strike the notice. *Richardson v. State*, 89 Md.App. 259, 266–67, 598 A.2d 1, 4–5 (1991)

Under the statutory scheme for capital cases, a defendant who is ineligible for the death penalty nonetheless may receive the State's notice, but that notice ultimately will be ineffectual because the defendant's ineligibility demonstrated at the sentencing phase eventually will prevent him or her from being sentenced to death. Indeed, the Court of Special Appeals in *Richardson* determined that "[n]o statute or rule provides authority for a court to strike a notice of intent to seek the death penalty once a sentencing body has determined that a capital defendant was indeed" ineligible for the death penalty. *Id.*, 598 A.2d at 4. Likewise, although the absence of a notice bars the pursuit of a sentence of death during the penalty phase, its presence does not mean that such a punishment will result automatically or even be pursued by the State. It is instead merely a procedural (but important) device that serves primarily to inform the defendant of his or her exposure to the State's possible pursuit of capital punishment.

---

8. Md. Rule 4–343 provides that if a defendant in a capital prosecution is found guilty, the fact-finder will be asked to determine, by a preponderance of the evidence, whether "[a]t the time the murder was committed, the defendant was mentally retarded." *See Richardson v. State*, 89 Md.App. 259, 263–65, 598 A.2d 1, 3–4 (1991) (stating that the determination of whether a defendant is mentally retarded is a question of fact that "must be made during the sentencing proceeding" (citations omitted)).

This, however, does not mean that there are not situations where a notice may be struck properly by a trial judge. If the notice is untimely, or fails to list at least one aggravating factor pursuant to § 2–303, the trial judge may strike the notice upon proper motion or objection. *See, e.g., Holmberg v. De Leon*, 189 Ariz. 109, 938 P.2d 1110 (1997) (instructing the trial court to strike a notice when it was untimely filed); *see also* Senate Judicial Proceedings Committee, Bill Analysis, S.B. 340 (Md.1995) (discussing the need for clarification of the timeliness requirements in response to two circuit court decisions striking notices as untimely). Beyond these circumstances, however, which go to the internal or procedural validity of the notice itself, the striking of a notice of intention to seek the death penalty is not authorized by the statutory framework of § 2–202(a)(1).

Once the State serves a notice on a defendant, the matter becomes, for all purposes, a capital prosecution. It is at this point that the defendant may move to dismiss the indictment for the reason that the indictment is legally defective or insufficient on its face to support a sentence of death. If the judge determines that the indictment is legally defective or insufficient to support a prosecution seeking the death sentence, the judge may dismiss the indictment, but he or she possesses no authority to strike the notice solely for reasons that assertedly make the indictment defective. If the indictment is believed to be insufficient to support a prosecution for death-eligible first degree murder, it is the indictment that should be dismissed, rather than the notice. Direct appellate review then may be sought from such a dismissal.

In the present case, Judge Manck exceeded his authority when he struck the Notice based on reasoning that in no way implicated the statutory requirements of § 2–202(a)(1).[9] The

---

9. The question answered by Judge Manck (and Judge North), whether *Apprendi–Ring* requires inclusion in the charging document of an allegation of first degree principalship, is a novel one and a matter of first impression in Maryland. I perceive that this question engages a complex analysis. This is precisely the sort of issue appellate courts decide ultimately. Applying the Majority's reasoning, however, the

belief that the indictment was legally deficient should have resulted in the dismissal of the indictment, rather than striking of the Notice. Judges North and Manck conspicuously were aware that the State had no ability to appeal their orders striking the two notices. Acquiescing in this procedural stratagem advanced by skillful defense counsel, as now sanctioned by the Majority, effectively insulates a judge's order from judicial review on direct or interlocutory appeal. Because I would determine that Judge Manck erred by striking the Notice in Henry's case, which Notice otherwise complied with § 2–202(a)(1), I would issue, even in light of the extraordinary nature of that relief, a writ of mandamus as sought by the State here.

### III.

In *In re Writ of Prohibition*, the Court emphasized both the intended scarcity and exceptional character of the prerogative writs:

> The common law extraordinary writs of mandamus and prohibition are just that—extraordinary; even when the power to issue them exists, whether to take that action is discretionary. The principles governing the exercise of that discretion are much the same, whether the court that is asked to issue the writ is invoking superintending power or acting in aid of its appellate jurisdiction. "The power [to issue a prerogative writ] is one which ought to be exercised with great caution...." Ordinarily, a writ will not lie to control the exercise of discretion. Such a writ ordinarily will not issue when another remedy is available, ... and is

---

ultimate responsibility for answering this important question in each capital case initiated by the State will be left to the respective trial judges, with virtually no meaningful opportunity for direct appellate review and resolution of those "answers." Differing interpretations of the relevant law are more than possible. I can imagine no better recipe for legal confusion and uneven application of the law.

not a substitute for appeal or writ of error. Generally speaking, more than mere error must be shown.

312 Md. at 305–06, 539 A.2d at 676 (citations omitted).

We have taken pains to preserve the extraordinary character of the writs. *See Doering v. Fader*, 316 Md. 351, 361–62, 558 A.2d 733, 738 (1989) (finding the circumstances of the case appropriate to issue a writ, but nonetheless declining to do so in light of the extraordinary nature of the writs). The issuance, and perhaps even the consideration, of such a writ represents a potential breakdown in the normal appellate process. Thus, we strive to restrain ourselves from issuing these writs in deference to our faith that the trial courts ordinarily will fulfill their duties in accordance with judicial precedent and statutory authority, and, when they do not, that we may consider the exercise of those duties on appeal. The hallmark of our judiciary, however, is process, and when that process, particularly in a capital case, is frustrated, we may be compelled to act.

We held that a writ is appropriate when "we believe the interests of justice require us to [issue a writ] in order to restrain a lower court from acting in excess of its jurisdiction, otherwise grossly exceeding its authority, or failing to act when it ought to act." *In re Writ of Prohibition*, 312 Md. at 307, 539 A.2d at 677. The purpose therefore of the writ is "to prevent disorder, from a failure of justice, where the law has established no specific remedy, and where in justice and good government there ought to be one." *Id.* Moreover, we opined in *Phillip Morris* that:

in deciding whether the present circumstances warrant our exercise of the extraordinary writ of mandamus in aid of our appellate jurisdiction, and in paying heed to Maryland's legal precedent in this area, we must consider the interests of justice and public policy, the protection of the integrity of the judicial system, the general preferability of the final judgment rule, and the adequacy of other available relief.

358 Md. at 713–14, 752 A.2d at 213.

The most important consideration in this case is not that the trial judge erred, but that he did so in a capital case in a

manner that was calculated to frustrate direct appellate review of the action. Such a maneuver, in my opinion, merits the grant of extraordinary relief.

The necessary effect of the trial court's decision in the present case insulates that action from timely scrutiny by an appellate court. Judge Manck was aware that striking the Notice placed the State in the position of either having to procure another indictment that complied with his (and Judge North's) novel conclusion, or foregoing altogether the possibility of seeking the death penalty. Creation of the horns of such a dilemma is anathema to our notion of judicial process, and counter to the interests of the proper administration of justice, as well as the discretion vested in the Office of the State's Attorney by the Legislature.[10]

Although the trial courts at times operate as laboratories and proving grounds for novel legal theories by experimenting with, anticipating, and evolving the existing law, the ultimate responsibility for advancement of the common law depends on the appellate courts in their role as the State arbiters of how the law is to be interpreted. When trial courts undertake to declare a novel legal doctrine or principle by caging it consciously in a way designed to elude direct and timely appellate review, we have the obligation to invoke the powers of the prerogative writs to correct the situation.

Although Judge North's action in Abend's case is not before us, this record bears witness to the fact that Judge Manck's action in Henry's case was not an isolated event. The contagion of the original error in striking a notice on improper grounds is evident. Curing the infection and foreclosing its

---

10. This Court has held that Maryland's statutory capital punishment scheme is constitutional even though it lacks "strict standards" to guide when a prosecutor may initiate a capital prosecution. *Calhoun v. State*, 297 Md. 563, 602–06, 468 A.2d 45, 63–65 (1983). In *Calhoun*, we found that "[a]bsent any specific evidence of indiscretion by prosecutors resulting in an irrational, inconsistent, or discriminatory application of the death penalty statute, [a claim of constitutional infirmity of the statute on those grounds] cannot stand." *Id.* at 605, 468 A.2d at 64.

further spread in an area of the law of such significance is of grave importance.

I am emboldened to employ the extraordinary writs in this case because it involves the orderly pursuit of Maryland's capital punishment statutory scheme. In *Doering,* although we would decline ordinarily to issue a writ in a case where a judge improperly recuses himself or herself, the fact that the case involved the potential imposition of the death penalty justified the issuance of a writ. 316 Md. at 360–61, 558 A.2d at 738. We stated in *Doering:*

> Under ordinary circumstances, we would decline to grant immediate appellate attention to a decision relating to recusal through the use of a writ of mandamus or prohibition. This, however, is not an ordinary case. Before us is a unique set of facts, involving a decision that directly affects the proper conduct of a sentencing proceeding in a capital case. The penalty of death "is qualitatively different from a sentence of imprisonment, however long," *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976), and a capital sentencing proceeding is qualitatively different from an ordinary sentencing proceeding. *See also Harris v. State,* 299 Md. 511, 517–18, 474 A.2d 890, [893] (1984).

> \*     \*     \*

> We are here afforded the opportunity to promptly and simply return [a capital] proceeding to a proper track, and that, in our judgment, warrants the grant of an extraordinary writ.

*Id.*

When the State elects to pursue the death penalty, we have a heightened role to see that trial judges apply the law evenhandedly and with the utmost regard for all parties' rights to the process to which they are due. This role involves, at the very least, our obligation to ensure that when trial judges interpret the relevant statutes and authorities, and especially embrace novel theories and questions not yet interpreted or decided by this Court, we preserve effective and timely chan-

nels of appellate review that have been granted by the Legislature. Md.Code (1973, 2002 Repl.Vol.), § 12–302(c) of the Courts and Judicial Proceedings Article.

For the foregoing reasons, I would issue a writ of mandamus to Judge Manck of the Circuit Court of Anne Arundel County compelling him to vacate his 28 September 2004 order granting Michael Darryl Henry's Motion to Strike the Notice of Intention to Seek the Penalty of Death in Case No. 02–K–02–001126 and to reinstate said Notice.

Judges WILNER and CATHELL have authorized me to state that they join in this Dissent.